348 F.2d 56
 121 U.S.App.D.C. 50, 60 P.U.R.3d 505
 CITIZENS TV PROTEST COMMITTEE, and Clarksburg Publishing
Company, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Rust Craft
Broadcasting Company, Northern West Virginia
Television Broadcasting Company,
WJPB-TV, Inc., Intervenors.
 No. 18738.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 14, 1964.
Decided May 7, 1965.
 
 Messrs. Joseph A. Fanelli and Benedict P. Cottone, Washington, D.C., for appellants.
 Mr. Daniel R. Ohlbaum, Deputy General Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and Joel H. Levy, Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Arthur B. Goodkind, Counsel, Federal Communications Commission, also entered an appearance for appellee.
 Mr. E. Stratford Smith, with whom Mr. Robert C. Barnard was on the brief for intervenor, Northern West Virginia Television Broadcasting Co. Mr. R. Michael Duncan also entered an appearance for intervenor, Northern West Virginia Television Broadcasting Co.
 Messrs. Paul A. Porter, Reed Miller and Thomas G. Fisher, Washington, D.C., were on the brief for intervenor, Rust Craft Broadcasting Co.
 Messrs. James A. McKenna, Jr., Joseph M. Kittner and Thomas N. Frohock, Washington, D.C., entered appearances for intervenor, WJPB-TV, Inc.
 Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit judges.
 BAZELON, Chief Judge:
 
 
 1
 Without hearing, the Federal Communications Commission granted intervenor Northern West Virginia Broadcasting Company's application for assignment from intervenor Rust Craft Broadcasting Company of the license to operate WBOY-TV, the only television station in Clarksburg, West Virginia.[1] Appellants, an ad hoc committee of Clarksburg townspeople and the publishers of the Clarksburg newspaper, were not parties to the proceedings leading to the grant; they challenge the Commission's denial of their timely petition for reconsideration.[2] Intervenor WJPB-TV, a party at the time of grant, operates the sole television station in nearby Weston, West Virginia.
 
 
 2
 * Northern's parent company, Fortnightly Corporation, also owns community antenna television system (CATVs) servicing most television sets in Clarksburg, and a second nearby city, Fairmont.[3] These systems bring television signals from mountain-top antennas to the lowland urban centers. Until the events to be related, subscribers could choose among five distant metropolitan stations not receivable with home antennas. In addition, they could receive the local broadcasts of WBOY-TV and WJPB-TV with home antennas,[4] as could non-subscribers and inhabitants of rural districts not reached by the CATVs.
 
 
 3
 In the early 1960's WBOY-TV, and to a lesser extent WJPB-TV, sought to persuade the Commission and the local District Court to end alleged unfair competitive practices and unregulated transmission by Fortnightly.[5] WBOY-TV and WJPB-TV were not carried by the CATVs, found them substantial competitors, and feared for their own economic viability. Eventually, Fortnightly agreed to carry WBOY-TV on its Clarksburg system, and to purchase WBOY-TV from Rust Craft. The instant application for assignment was then made, and Rust Craft ceased to prosecute its suits and claims. WJPB-TV filed an opposition to the application, claiming that its economic difficulties would be aggravated if its local competitor were carried on Fortnightly's CATV systems. When Fortnightly agreed to carry WJPB-TV as well as WBOY-TV on its systems, however, WJPB-TV, in accordance with the agreement, withdrew its opposition and urged a grant.
 
 
 4
 The Commission then called for oral argument, but not hearing, on the question of duopoly:
 
 
 5
 'Whether, and if so under what conditions, the public interest would be served by permitting common ownership of the CATV and the only television station in Clarksburg, West Virginia, which station has demonstrated its economic capacity for independent operation.'
 
 
 6
 It concluded, with two Commissioners dissenting, that a hearing on the application was not required, and that the circumstances justified an immediate grant. In order to protect the local stations, it prohibited Fortnightly's CATVs from carrying a distant station's broadcast of any program broadcast at the same time by either local station. It approved Fortnightly's action in substituting the local stations for two of the distant channels previously carried on its CATVs.
 
 
 7
 In their petition for reconsideration, Clarksburg and the Citizens Committee focussed chiefly upon the conditions of service attached to the grant. They claimed, inter alia, that the Western station should not be imposed on Clarksburg viewers,[6] that the CATVs should be forced either to increase their capacity or to lower their rates,[7] and that color television programs should have been excepted from the provision against duplication.[8] They protested that their interests had been 'sold down the river' in the parties' private negotiations. They also raised questions about Fortnightly's character qualifications, and urged that the Commission's actions were inconsistent with its policies against duopoly, and required a hearing.
 
 
 8
 In denying reconsideration, the Commission denied standing to the Citizens Committee,[9] but correctly found that Clarksburg Publishing had standing to petition.[10] It further found that the petition failed to show satisfactory reasons under its rules[11] for not objecting prior to grant. Springfield Television Broadcasting Corp. v. Federal Communications Comm., 117 U.S.App.D.C. 214, 328 F.2d 186 (1964). In concluding that the public interest required no evidentiary hearing, the Commission found that appellants did not plead facts which 'clearly point to an injury to the public sufficient to outweigh considerations of administrative orderliness.' Valley Telecasting Co. v. Federal Communications Comm., 118 U.S.App.D.C. 410, 413, 336 F.2d 914, 917 (1964).
 
 II
 
 9
 In our opinion, the dispositive question on this appeal is, as stated in the Commission's brief, 'Whether the Commission abused its discretion in concluding that no evidentiary hearing should be held on the question of whether the common ownership of the local television station and the CATV was desirable, and whether it violated the Commission's multiple ownership rules * * *.' We conclude that a hearing should have been held.
 
 
 10
 We said in Valley Telecasting, supra, that the question whether a petition for reconsideration makes allegations of injury to the public interest requiring a hearing may be resolved 'by a more exacting standard than might have been appropriate at an earlier stage in the proceeding.'[12] We think that certain matters presented here involved such overriding public interest that the Commission would have been bound to consider them on its own initiative.[13] Such matters, even if artlessly asserted, are in our opinion sufficient to satisfy any reasonable Commission definition of its 'more exacting' standard.
 
 
 11
 The Commission itself has determined that the duopoly issue requires factual inquiry and scrutiny. Thus, although no party then opposed the application, it set the duopoly issue for oral argument. The Commission's Broadcast Bureau argued and the two dissenting Commissioners agreed that an evidentiary hearing was required. Even in its denial of hearing, the Commission conceded that it had not yet developed 'a long range policy with respect to this problem,' and stated that applications pending the development of such a policy would be 'carefully scrutinized' and might be 'deferred.'[14] After this decision, but before denying reconsideration, it opened a full-scale inquiry into the question of joint ownership of television broadcast licensees and community antenna systems.[15] The Commission's announced purpose was to obtain factual information upon which to formulate much-needed policy and to exercise caution in the interim.
 
 
 12
 We think the Commission's assessment of the need for information, policy and caution was valid. In other cases, the Commission has endorsed joint ownership of broadcast and CATV facilities only upon finding that its policy against duopoly was inapplicable because special circumstances made local service impossible under any other conditions.[16] It claims no such justification here.[17] It argues only that any impact of duopoly is outweighed by the public benefit in ending the Fortnightly-Rust Craft litigation and strengthening WJPB-TV, the independent station. It also denegates the possible impact of conflicts of interest by reference to Fortnightly's promises of independent and forceful management of WBOY-TV. In effect it holds that a hearing could not have developed facts requiring denial.
 
 
 13
 On the present record, the Commission could not have determined that Fortnightly's promises, together with an end to the pending litigation, would in all events outweigh its policies against duopoly. It has not previously relied on promises that a licensee would 'ignore' conflicts of interest among his enterprises, and states no special facts to support it in doing so here.[18] Duopoly is an important issue[19] which has usually been aired in full inquiry.[20] The end of private litigation hardly overrides a major public interest. Moreover, since the litigation was suspended pending these proceedings, a hearing could not have prejudiced any interest arising from it.
 
 
 14
 Quite clearly, the Commission would not have approved the transfer had it anticipated the demise of WJPB-TV, the independent and weaker of the two local television stations.[21] This result would have given Fortnightly a monopoly of all local television services, and would have cut in half the number of services available to non-subscribers.[22] Without competition, any likelihood that WBOY-TV would live up to Fortnightly's promises to the Commission would be diminished, and its ability to operate under independent management enhanced.
 
 
 15
 Yet the Commission's determination that the chances for WJPB-TV's survival would be enhanced, like the fate of the CATV subscribers, seems to have been settled by private agreement. By trading placement of WJPB-TV on its CATVs for that station's promise to support the application to assign, Fortnightly eliminated a proclaimed adversary. WJPB-TV, which might suffer the most adverse consequences of the transfer, was contractually bound to support it, and urge its beneficial aspects. With perhaps as great effect, Fortnightly used private action to put the Commission in a squeeze. WBOY-TV would not be assured of a channel on the CATVs unless the transfer was approved; WJPB-TV would be there regardless. Disapproval then might doom the Clarksburg station.[23] Indeed, even a need for expedient action on the application was 'created.' Fortnightly put WJPB-TV on both CATV systems, but WBOY-TV on only one, pending the Commission's decision.[24]
 
 
 16
 The Commission did not say what weight it gave WJPB-TV's representation that grant was in the public interest and that it had sufficient protection from duplication. It is not clear whether the agreement was entitled to any weight. When the Commission has considered the needs of local stations for protection, it has concluded, for apparently sound reasons, that protection against duplication must extend both before and after local broadcast.[25] In accepting less protection by contract, WJPB-TV may have had but a limited choice of alternatives: to go on the CATVs immediately or to endure a lengthy period of competition during which WBOY-TV but not itself would be on the CATVs. In view of the Commission's prior determination, WJPB-TV's contractual agreement could not, without inquiry or explanation, be accepted as representing the public interest.[26]
 
 
 17
 The unexamined possibility that Fortnightly's ownership of WBOY-TV might create unbearable competitive strain on WJPB-TV is at least as troublesome.[27] Placement of WBOY-TV on the Fairmont CATV system could threaten WJPB-TV's link to that city-- next to Clarksburg, the largest in its primary reception area. WJPB-TV once broadcast from Fairmont,[28] and apparently maintains a studio there. Now WBOY-TV may be anxious to open a Fairmont studio,[29] both because it has a duty to broadcast in the interest of its entire service area and because Fortnightly has a substantial interest in the Fairmont market through its CATV. Payments made by CATV subscribers-- in some sense 'for' the reception of WJPB-TV and WBOY-TV as well as the more distant stations-- will be available for the benefit of WBOY-TV, but not its weaker competitor. And Fortnightly may be pressured by its resentful subscribers to exploit WBOY-TV's advantages, in hopes of vacating WJPBTV's present channel on its systems for a metropolitan station.[30]
 
 
 18
 It is apparent that these unconsidered issues, concerning which we intimate no opinion, require hearing. 'However unwittingly, the Commission seems to have assumed the defense of its grant, rather than the public interest, as its primary role in the proceedings.'[31] When, as here, adversary parties reconcile their differences by contract, the Commission must make its own search, rather than let the parties control the flow of information to it.[32] Having failed to do so, its conclusion that the chances for WJPB-TV's survival have been enhanced by its disposition is unsupported, and its grant of the application for assignment cannot stand. We therefore vacate the Commission's order, and remand the cause to it for its further consideration.[33]
 
 III
 
 19
 On remand, the Commission might consider whether it would be inviting effects disruptive to its processes if it persisted in its view that the WJPB-TV-- Fortnightly agreement, and the effect of this agreement and the Commission's order on Fortnightly's CATV subscribers are entirely 'private arrangements.'[34] Under the agreement between WJPB-TV and Fortnightly, WJPB-TV can be dropped from the CATVs if any competent court or agency orders Fortnightly to do so. Since the Commission does not require Fortnightly to carry WJPB-TV and in the past has exercised no general jurisdiction over CATV systems,[35] its refusal to consider protection of subscriber interests may encourage them to seek this result. Fortnightly might have little zeal in opposing such action.
 
 
 20
 Moreover, the Commission might be concerned that the CATVs, by substituting rather than adding local stations without any change in rates, were receiving payments for reception of local television service which others obtain free.[36] Conversely, it may not be without authority or interest in the question of how many distant stations were to be carried by a CATV, if that could affect the chances for survival of an independent local station.[37] Although the Commission does not ordinarily supervise CATVs or serve as a forum for disgruntled CATV subscribers, it might consider whether the relationship of the CATV to its primary concern provides a substantial reason to do so here.[38]
 
 IV
 
 21
 Appellants raise a number of issues in addition to those which were set by the Commission for oral argument in the initial proceedings herein. Some of these, such as the question whether WJPB-TV is local to Clarksburg, are essentially facets of the problem of what conditions should be attached to any grant. We expect that the Commission will so consider them. Other of the issues, such as the suitability of Fortnightly as a television broadcast licensee, are not related to the duopoly problem. We do not disturb the Commission's view that these issues were neither timely raised nor such as to require Commission action in the public interest.
 
 
 22
 Remanded for proceedings in accordance herewith.
 
 FAHY, Circuit Judge, (dissenting):
 
 23
 I agree with the Commission that petitioners did not make a satisfactory showing to excuse their failure to file a pregrant objection to the application for assignment. The Commission nevertheless considered the merits of their petition for reconsideration and denied it. I would affirm.
 
 
 24
 Under Section 405 of the Federal Communications Act, 47 U.S.C. 405, whether to grant the petition for reconsideration was a matter within the discretion of the Commission, weighing the public interest factors involved in the proposed assignment. It seems to me the exercise by the Commission of this discretion was not arbitrary or unreasonable. Springfield Television Broadcasting Corp. v. FCC, 117 U.S.App.D.C. 214, 328 F.2d 186.
 
 
 25
 Separate adjudication of the problems was not precluded by the pendency of a rule-making proceeding. The decision is supported upon its own facts and need not necessarily have been postponed. Whether or not the particular case should have awaited such a general proceeding was a matter for the exercise of good judgment by the Commission.
 
 
 26
 One of the reasons given by the court as a public interest factor warranting an evidentiary hearing is the possible injury to WJPB-TV if the assignment were approved, to the detriment of its viewing public. But petitioners did not advance this reason in their petition for reconsideration nor on appeal to this court; and WJPB-TV does not contest the grant. Petitioners' arguments were based primarily on the injury to them as cable subscribers and the adverse effect of ownership of WBOY-TV by the cable system on petitioner Clarksburg Publishing Company's local advertising revenues.
 
 
 27
 While common ownership of this type may be a general problem in need of further study, the contentions advanced by petitioners I think did not warrant a conclusion in this particular case contrary to that reached by the Commission.
 
 
 
 [1]
 Rust Craft Broadcasting Co., 2 Pike & Fischer R.R.2d 83 (1964)
 
 
 [2]
 Rust Craft Broadcasting Co., 2 Pike & Fischer R.R.2d 908 (1964)
 
 
 [3]
 There were an estimated 9,200 subscribers in Clarksburg and 5,500 in Fairmont. Both cities have populations approximating 28,000. Weston, with a population of about 9,000, is the southernmost of the three towns; Fairmont is the northernmost, about 35 miles from Weston and 20 miles from Clarksburg
 
 
 [4]
 In some cases, not without inconvenience. Note 36 infra
 
 
 [5]
 The Clarksburg franchise has been a fruitful source of litigation. See Clarksburg Pub. Co. v. Federal Communications Comm., 96 U.S.App.D.C. 211, 225 F.2d 511 (1955); WSTV, Inc. v. Fortnightly Corp., 23 Pike & Fischer R.R. 184 (1962); Distribution of Television Programs by CATV Systems, id. at 1624 (1962)
 
 
 [6]
 The reverse claim-- that the Clarksburg station should not be imposed upon Fairmont viewers-- appears to have been made by a Fairmont citizens' committee which sought reconsideration from the Commission, but does not join the appeal from denial
 
 
 [7]
 In putting the two local stations on the CATVs, the number of distant stations carried was cut to three, since system capacity is five channels. See note 34 infra
 
 
 [8]
 WJPB-TV apparently had no color equipment when the Commission acted; appellants alleged that WBOY-TV's color broadcasts were inferior
 
 
 [9]
 The Commission stated,
 'The number of services to be supplied, the particular stations to be carried in addition to the two local stations, and the fees to be charged for the cable service are all matters which are outside of the direct ambit of our Order and which are subject to negotiation between the cable systems and their customers. Manifestly, therefore, the Clarksburg Committee and the Fairmont subscribers are not aggrieved by our order but by the manner in which Fortnightly has chosen to settle its differences with the local television stations * * *.'
 
 
 [2]
 Pike & Fischer R.R.2d at 912. In view of appellant Clarksburg's standing, we do not consider the correctness of this conclusion. But compare City of Pittsburgh v. Federal Power Comm., 99 U.S.App.D.C. 113, 118-122, 237 F.2d 741, 746-750 (1956)
 
 
 [10]
 Clarksburg claimed that the concentration of television media in Fortnightly would adversely affect its advertising potential. See Clarksburg Pub. Co. v. Federal Communications Comm., supra, note 5. There is no serious question of Clarksburg's standing to appeal here. Ibid
 
 
 [11]
 47 C.F.R. 1.106 (1964)
 
 
 [12]
 118 U.S.App.D.C. at 415, 336 F.2d at 919
 
 
 [13]
 'The statute contemplates that, in appropriate cases, the Commission's inquiry will extend beyond matters alleged in the protest * * *.' Clarksburg Pub. Co. v. Federal Communications Comm., 96 U.S.App.D.C. at 215, 225 F.2d at 515. This statement, made in 1955, is not affected by the 1962 amendments to 47 U.S.C. 309. The statute now provides for hearing on any application in which 'a substantial and material question of fact is presented or the Commission for any reason is unable to make the finding (that the public interest, convenience and necessity will be served) * * *.' 47 U.S.C. 309(d) (2), (e) (Supp. V 1963)
 
 
 [14]
 2 Pike & Fischer R.R.2d at 86. It appears that the Commission is in fact deferring action on a large number of broadcast license renewals because of duopoly problems, Notice of Inquiry & Proposed Rule Making, FCC 65-334, 4 Pike & Fischer R.R.2d 1679, 1715 (1965) (dissenting opinion)
 
 
 [15]
 Notice of Inquiry, 29 Fed.Reg. 5416, April 22, 1964
 
 
 [16]
 '* * * a CATV owner might perhaps not be as aggressive in promoting and developing his regular station as would another, because of possibly conflicting interests. But this is balanced by the fact that in a small market perhaps the CATV operator is the only one who is likely to build a station, having profited, and built up set circulation, through the CATV.'
 CATV Systems & Auxiliary Television Services, 18 Pike & Fischer R.R. 1573, 1610 (1959); Prairie States Broadcasting Co., 1 Pike & Fischer R.R.2d 1001 (1964) (small CATV and failing VHF station in community without other local service); In the Matter of Amendment . . . of the Commission's Rules Relating to Multiple Ownership of Standard FM and Television Broadcast Stations, 3 Pike & Fischer R.R.2d 1554, 1562-1563 (1964).
 
 
 [17]
 The Commission stated when inviting oral argument '(WBOY-TV) has demonstrated its economic capacity for independent operation.'
 
 
 [18]
 The Commission has opposed 'any common ownership between broadcast stations in the same service in the same city,' Notice of Inquiry & Proposed Rulemaking, Pike & Fischer R.R. Current Serv., p. 53:1viii (1964). See Shenandoah Life Ins. Co., 19 Pike & Fischer R.R. 1 (1959) (where one man forbidden to serve as a director of both life insurance company and bank, each controlling broadcast stations in the same service in the same community; 'it is the potential of (impairment of competition) which the Commission's policy is designed to guard against.' Id. at 2). To what extent and under what circumstances a CATV should be considered 'in the same service' as an area television station is one of the questions the Commission now deems it necessary to resolve. Notice of Inquiry, note 15 supra. Cf. Clarksburg Pub. Co. v. Federal Communications Comm., note 5 supra, 96, U.S.App.D.C. at 216-219, 225 F.2d at 516-519
 The dissenting Commissioners noted that the 'promises' of a regulated entity are often hard to police and enforce, see W. S. Butterfield Theatres v. Federal Communications Comm., 99 U.S.App.D.C. 71, 237 F.2d 552 (1956).
 
 
 [19]
 See Hudson Valley Broadcasting Corp. v. Federal Communications Comm., 116 U.S.App.D.C. 1, 320 F.2d 723 (1963), and cases there cited
 
 
 [20]
 E.g., In the Matter of Amendment . . . of the Commission's Rules Relating to Multiple Ownership, note 16 supra
 
 
 [21]
 Its concern is manifest in two recently released orders, Notice of Inquiry & Proposed Rule Making, note 14 supra at 1703; First Report and Order, FCC 65-334, 4 Pike & Fischer R.R.2d 1725, 1745-1746 (1965)
 
 
 [22]
 CATV services cannot be provided economically to rural areas, it appears
 
 
 [23]
 2 Pike & Fischer R.R.2d at 919-920
 
 
 [24]
 Ibid
 
 
 [25]
 First Report and Order, note 21 supra, at 1750-1752, 51-61; Notice of Proposed Rule Making, 28 Fed.Reg. 13789, 13790 (1963); compare Lompoc Valley Cable TV, 2 Pike & Fischer R.R.2d 22 (1964) (petition for reconsideration claiming insufficiency of protection of local station requires Commission consideration in the public interest); see also Carter Mountain Transmission Corp. v. Federal Communications Comm., 116 U.S.App.D.C. 93, 321 F.2d 359 (1963.)
 
 
 [26]
 Fortnightly's contractual agreement to afford WJPB-TV protection from simultaneous duplication, it may be noted, may have been little more than an effort to anticipate the conditions the Commission would impose. See Open Letter to the Subscribers of the Clarksburg Television Cable Co., April 4, 1965. Compare First Report and Order, note 21 supra, at 1784-1785
 
 
 [27]
 See Notice of Inquiry & Rule Making, note 14 supra, at 1703
 
 
 [28]
 It suspended operations, and subsequently testified that it 'had been harmed by the CATV.' See CATV Systems & Auxiliary Services, 18 Pike & Fischer H.R. 1573, 1589 (1959). The Commission was unable to conclude that CATV competition was a decisive factor in its demise, because of other factors present. Id. at 1594-1595
 
 
 [29]
 Apparently Commission authorization for such studios is unnecessary. Louisiana Television Broadcasting Corp. v. Federal Communications Comm., 121 U.S.App.D.C. , 347 F.2d 805
 
 
 [30]
 Another matter, noted by WJPB-TV in its initial opposition, is that assignment of WBOY-TV from Rust Craft would permit marked improvement of WBOY-TV's transmission, by ending restrictions intended to prevent overlap with another Rust Craft station. Although this would occur on any assignment of WBOY-TV from Rust Craft, it may still be a factor in evaluating the competitive impact on WJPB-TV of a transfer to Fortnightly
 
 
 [31]
 Clarksburg Pub. Co. v. Federal Communications Comm., note 5 supra, 96 U.S.App.D.C. at 215, 225 F.2d at 515
 
 
 [32]
 Clarksburg Pub. Co. v. Federal Communications Comm., supra; Enterprise Co. v. Federal Communications Comm., 97 U.S.App.D.C. 374, 231 F.2d 708 (1955), and 105 U.S.App.D.C. 119, 265 F.2d 103 (1959); cf. St. Louis Amusement Co. v. Federal Communications Comm., 104 U.S.App.D.C. 45, 259 F.2d 202, cert. denied, 358 U.S. 894, 79 S.Ct. 154, 3 L.Ed.2d 121 (1958)
 
 
 [33]
 On remand, the Commission presumably will be guided by its recent policy statement, note 15 supra in deciding whether to proceed on an ad hoc basis or to defer action pleading completion of its rule-making inquiry. Cf. Securities & Exchange Comm. v. Chenery, 332 U.S. 194, 202-203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)
 
 
 [34]
 Compare note 9 supra. It appears from Commission letters to subscribers that the Commission considered the subscriber-CATV dispute. But, based on Fortnightly's ex parte representations about the cost of expanding CATV capacity to seven channels, no action was taken. The question arises whether an adversary hearing on the matter was required
 
 
 [35]
 Compare CATV Systems & Auxiliary Television Services, 18 Pike & Fischer R.R. 1573 (1959), with Notice of Inquiry & Rule Making, note 14 supra
 
 
 [36]
 Many subscribers to the CATVs apparently cannot receive either local station off the air, because of antenna arrangements. 2 Pike & Fischer R.R.2d at 917
 
 
 [37]
 Compare Lompoc Valley Cable TV, note 25 supra
 
 
 [38]
 Compare City of Detroit, Michigan v. Federal Power Comm., 97 U.S.App.D.C. 260, 230 F.2d 810 (1955), cert. denied, Panhandle Eastern Pipe Line Co. v. City of Detroit, Mich., 352 U.S. 829, 77 S.Ct. 34, 1 L.Ed.2d 48 (1956); see note 35 supra