**WEST MICHIGAN TELECASTERS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**
BCU–TV, Intervenor.

No. 21396.

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1968.

Decided May 31, 1968.

---

Mr. Reed Miller, Washington, D. C., with whom Mr. David H. Lloyd, Washington, D. C., was on brief, for appellant.

Mr. Stuart F. Feldstein, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and John H. Conlin, Associate General Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. James A. Gammon, Washington, D. C., with whom Miss Lorie M. Molnar, Washington, D. C., was on the brief, for intervenor.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

On this appeal we are asked to review an October 3, 1967 order of the Federal Communications Commission granting an application of BCU-TV for a new television broadcast station to operate on Channel 41 at Battle Creek, Michigan, and denying a petition of appellant West Michigan Telecasters, Inc. requesting that the BCU application be designated for hearing.

█ West Michigan presses a two-pronged attack. First it contends that its pleadings before the Commission raised substantial and material questions of fact with respect to the qualifications of BCU-TV so that, pursuant to Section 309(e) of the Communications Act of 1934, 47 U.S. C. § 309(e) (1964 ed.), BCU's application should have been designated for an evidentiary hearing. In addition, it argues that, even if the Commission was not required to hold a hearing in the instant case, it was obliged to state with particularity the basis for its action. On this record we are not able to pass on West

Michigan's first contention. Moreover, since we are wholly in accord with its second proposition and are similarly struck by the absence of specific findings of fact, we remand this case to the Commission for further consideration consistent with the views expressed herein.

The history of the BCU-TV application is somewhat confusing. Briefly stated, the original application was filed on November 1, 1965. On December 6, 1965, pursuant to Section 309(d) of the Act and Section 1.580(i) of the Commission's Rules and Regulations, 47 C.F.R. § 1.580 (i) (Supp.1968), West Michigan filed a "Petition to Deny or Designate for Hearing," challenging BCU's financial qualifications and its ability to effectuate its programming proposals. An opposition to that petition and a reply to the opposition were submitted. In response to these pleadings, BCU amended its application three times and, by order released October 4, 1966, the application as amended was designated for hearing to determine, *inter alia,* the basis and reasonableness of BCU's estimate of first year revenues and the extent to which the personal resources of the partners could be relied on to cover construction costs and first year operating expenses.

On November 3, 1966, BCU petitioned to amend again its application and accompanied this petition with a request that its application be removed from the hearing docket and returned to the processing line pursuant to Section 1.522(c) of the Commission's rules, 47 C.F.R. § 1.522(c).

The Hearing Examiner granted these requests and, on December 13, 1966, West Michigan filed a supplemental petition to deny BCU's amended application. On January 20, 1967, March 16, 1967, and again on June 14, 1967, the Commission wrote BCU requesting further amendments to correct deficiencies relating to various financial aspects of the application and BCU's compliance with its obligation to ascertain the programming needs of the community it intended to serve. BCU responded to each such request and its application was finally approved by the order now under review on October 3, 1967.

Not all of the applications pending before the Commission need be designated for a hearing. *See, e. g.,* Broadcast Enterprises, Inc. v. F. C. C., 129 U.S.App. D.C. 68, 390 F.2d 483 (1968). Section 309(d) of the Act provides that, when the Commission finds there are no substantial and material questions of fact and a grant of the application would be consistent with the public interest, it shall make the grant requested. And this provision is explicitly made applicable to cases wherein a party in interest has filed a petition to deny which contains specific allegations of the inadequacies of the application.[1]

West Michigan does not challenge this interpretation of Section 309(d), but does argue that the record in the instant case clearly demonstrates that there exist substantial and material questions of fact which can be resolved only by an eviden-

1. The specific language of 47 U.S.C. § 309 (d) is as follows:

"(d) Petition to deny application; time; contents; reply; findings.

"(1) Any party in interest may file with the Commission a petition to deny any application (whether as originally filed or as amended) to which subsection (b) of this section applies * * *. * * * The petition shall contain specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with subsection (a) of this section. Such allegations of fact shall, except for those of which official notice may be taken, be supported by affidavit of a person or persons with personal knowledge thereof. * * *

"(2) If the Commission finds on the basis of the application, the pleadings filed, or other matters which it may officially notice that there are no substantial and material questions of fact and that a grant of the application would be consistent with subsection (a) of this section, it shall make the grant, deny the petition, and issue a concise statement of the reasons for denying the petition, which statement shall dispose of all substantial issues raised by the petition. * * * *"

tiary hearing. West Michigan points to the fact that even after three amendments were made in response to the original petition to deny, the Commission thought the application sufficiently uncertain to order a hearing. And, West Michigan continues, such uncertainties were obviously not clarified by subsequent amendments since the Commission, on three separate occasions, had to request further amendments from BCU. Finally, West Michigan points to the record itself and attempts to show how various assertions of BCU are inaccurate, incomplete or unrealistic.

 In its memorandum accompanying the order granting BCU's application, the Commission touched on several of the points raised by West Michigan in its pleadings and concluded that none of them necessitated holding a hearing. As indicated, on this record we are not in a position to say that this is error. Admittedly, the scope of our review is quite narrow; we defer to the expertise and experience of the Commission within its field of specialty and would reverse only where the Commission's position is arbitrary, capricious or unreasonable. Folkways Broadcasting Company v. F. C. C., 126 U.S.App.D.C. 123, 375 F.2d 299 (1967); Sayger v. F. C. C., 114 U.S.App.D.C. 112, 312 F.2d 352 (1962). And it is clear that the decision of when hearings are necessary or desirable to clarify issues is one which lies in the first instance with the Commission.

 However, in order for a court to exercise in any meaningful way its function of review, it is necessary that the Commission state specifically the basis for each of its conclusions. Community Broadcasting Co. v. F. C. C., 107 U.S. App.D.C. 95, 274 F.2d 753 (1960); Radio Station KFH Co. v. F. C. C., 101 U.S.App. D.C. 164, 247 F.2d 570 (1957). Indeed, Section 309(d), upon which the Commission relies for authority to grant an application without first holding a hearing, states that the Commission "shall make the grant, deny the petition, *and issue a concise statement of the reasons for deny-*

*ing the petition,* which statement shall dispose of all substantive issues raised by the petition." (Emphasis added.) Such a statement is conspicuously absent from this record. The Commission's memorandum is merely a collection of conclusory comments; it may be concise, but it certainly does not dispose of the issues raised by West Michigan's pleadings. Consider, for example, the Commission's treatment of two of these issues.

Throughout the tortuous processing of BCU's application, one of the most hotly contested issues was BCU's financial qualifications. The parties agree that the standard for judging the financial qualifications of an applicant is whether it was sufficient funds to cover estimated construction costs and first year operating expenses. Ultravision Broadcasting Co. et al., 1 F.C.C.2d 544, 5 PIKE & FISCHER R. R.2d 343 (1965). Obviously, therefore, the basis and reasonableness of the estimates of costs and expenses are material considerations. West Michigan has challenged both of these, alleging that the dollar values assigned to certain items are patently unrealistic and that other necessary items are not included in the general estimates. The Commission merely states: "We are satisfied that *if* the estimate of first year operating costs is reasonable, the applicant is financially qualified." (Emphasis added.) It then mentions that in fact BCU has a $74,000 margin, but the base figures from which this margin is derived are nowhere stated or explained. An explanation for these figures and an answer to West Michigan's contentions do appear in the Commission's brief, but this brief is not a substitute for Commission findings. Hudson Valley Broadcasting Corporation v. F. C. C., 116 U.S.App.D.C. 1, 5–6, 320 F.2d 723, 727–728 (1963). Indeed, the Supreme Court has explicitly stated that "[t]he courts may not accept appellate counsel's *post hoc* rationalization for agency action." Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).

With respect to its programming proposal, BCU's original application specified Unisphere Broadcasting System and ABC television network programs. West Michigan's original petition to deny asserted that neither ABC nor Unisphere would be available. By amendment prior to designation for hearing, BCU eliminated all reference to Unisphere and indicated a complete schedule of ABC programming. West Michigan continued to challenge the ability of BCU to obtain ABC programming, and BCU countered with statements that it was reasonable to assume ABC would be available and that contacts at ABC said that ABC had no objection to BCU's specifying ABC programming in its application. The Commission's resolution of this dispute was simply: "Petitioner has not made a convincing showing that an ABC network affiliation will not be available to BCU-TV and BCU-TV has clearly indicated that there is a reasonable possibility that it may obtain such an affiliation." No facts from which this conclusion can logically be inferred appear. Once again, the Commission's brief supplies some of the answers, but none can be found in the opinion and order itself.

■ Our discussion of the issues of financial qualifications and programming proposals is by way of illustration only. Other issues raised by West Michigan were equally summarily treated. Accordingly, not only must we agree with West Michigan that the Commission failed to make the requisite findings of fact, but the absence of such findings precludes us even from determining whether the Commission's decision not to hold an evidentiary hearing on BCU's application was reasonable. It is entirely possible that the Commission may now conclude that, in order to clarify the issues, a hearing would be desirable. Although we do not specifically order the Commission to hold a hearing, nothing in this opinion should be construed to foreclose such a course. *Compare* L. B. Wilson, Inc. v. F. C. C., 130 U.S.App.D.C. ——, 397 F.2d 717 (decided May 23, 1968).

Remanded.