523 F.2d 1185
 173 U.S.App.D.C. 236
 CIVIC TELECASTING CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, North Texas Broadcasting
Corp., Amon G. Carter, Jr., Capital Cities
Communications, Inc., Intervenors.
 No. 74-1952.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 5, 1975.
Decided Nov. 28, 1975.
 
 James T. Maxwell, pro se.
 Sheldon M. Guttmann, Counsel, FCC, with whom Ashton R. Hardy, Gen. Counsel and Joseph A. Marino, Associate Gen. Counsel, Washington, D. C., were on the brief for appellee, FCC.
 J. Roger Wollenberg, Washington, D. C., with whom Joel Rosenbloom, David R. Anderson and Richard D. Paisner, Washington, D. C., were on the brief for intervenor Capital Cities Communications, Inc., Timothy N. Black, Washington, D. C., also entered an appearance for intervenor, Capital Cities Communications.
 Michael Finkelstein, Washington, D. C., was on the brief for intervenor, Amon G. Carter, Jr.
 Michael H. Bader and Henry A. Solomon, Washington, D. C., also entered appearances for intervenor, North Texas Broadcasting Corp.
 Before TAMM, ROBINSON and MacKINNON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant-petitioner Civic Telecasting Corporation (Civic) has urged us to declare a rule announcing a broad duty for the Federal Communications Commission (FCC) in its treatment of petitions to deny license renewals. This proposed duty would require the FCC to deny the renewal, launch its own full-scale investigation, or schedule a hearing whenever a petition to deny failed to present facts sufficient to indicate a substantial question that the renewal would not serve the public interest, convenience and necessity. We cannot, under the facts of this case, perceive any reason for so burdening the agency.
 
 
 2
 The petition to deny, filed without supporting affidavits, alleged, Inter alia, that the licensees had committed anticompetitive practices injurious to the public interest. Civic's principals, at the time of filing the petition were also owners of another corporation engaged in private antitrust litigation with the licensees and had obtained information in that lawsuit which they felt was relevant to the renewal application. Before Civic filed its already-prepared responsive pleading in the FCC proceedings, however, the antitrust defendants obtained a protective order on September 30, 1971, limiting use of discovered information to the antitrust suit. A second protective order was issued on February 2, 1972, modifying the September 30 order and stating that all discovered information which the court found to be confidential could not be revealed except in preparation for the trial. In order to allow Civic further time to present the information it had obtained, the FCC granted an indefinite extension so that Civic could complete its previously-filed pleadings.
 
 
 3
 In the two years that followed, attempts were made by Civic and the licensees to get the information released for presentation before the FCC.[1] Finally in 1974, the FCC determined that Civic could respond without fear of being held in contempt of court and allowed Civic 15 days in which to complete its reply and to furnish the Commission with the facts which Civic insisted were relevant to the license renewal. Civic still refused to come forward with the information and, more important, made no effort to accept the FCC's recommended alternative of indicating which documents were protected and necessary for complete agency review. The FCC subsequently ruled on facts currently before it and found no reason to deny the renewal application or to call for a hearing on a substantial issue. More than a week after the decision, Civic wrote to the trial court requesting permission to use information obtained from Belo that Belo had previously offered to Civic and the FCC. At that point, however, Belo no longer was willing to divulge confidential information since its application had been granted. One month following the renewal grant, Civic filed a petition for reconsideration, presenting no newly-discovered or newly-released information but alleging that Belo's subsequent change of heart proved its insincerity in offering to allow use of the information for consideration of the renewal application. The FCC denied this petition for reconsideration and Civic appealed to this court.[2]
 
 
 4
 This case, despite its complex factual setting, presents only two serious issues: (1) whether the FCC correctly determined that Civic had unreasonably refused to come forward with the promised damaging information to support its allegations; and (2) whether, on the facts and allegations before it, the FCC could reasonably have granted the renewal without a hearing.[3] We affirm the Commission's actions in both respects.
 
 
 5
 We sympathize with Civic's frustration and uncertainty at the piecemeal release of information in its possession; similarly, we commend Civic for its efforts to follow to the letter the court orders binding it. Despite these facts, however, we agree that the FCC acted reasonably in March, 1974, when it granted the license applications after Civic failed either to complete its responsive pleadings or to identify protected information.
 
 
 6
 Civic, proceeding Pro se in its petition to deny, had by that time received court release of most protected evidence. Although Civic feared, perhaps justifiably, to rely on Belo's offer of limited use of the materials,[4] it made no timely efforts to seek clarification[5] from the court, waiting instead until after the reply time had run and the FCC had granted the renewal. Contrary to Civic's assertions, Belo's reluctance at that late date to assist Civic in further resistance to the renewal does not prove that its prior offer to allow use of the information in order to facilitate an FCC decision on the application was disingenuous.
 
 
 7
 Even if Civic's overly cautious refusal to rely on Belo's release was justified by fear of possible court action, we find no reasonable basis for Civic's failure to provide the FCC a list of relevant documents, with appropriate sections indicated by number or title, and of the protective order preventing disclosure of each. This alternative, recommended by the FCC in its telegram of March 13, 1974, would have allowed the FCC some basis for belief that the damaging information did exist but could not be presented safely by the petitioner for denial. It should also have alleviated Civic's concern regarding information discovered from non-parties. Furthermore, Civic could not reasonably have feared that listing documents by number or title would have violated the court order.
 
 
 8
 Instead of accepting this alternative, Civic did nothing to complete its pleadings. Civic now claims that, despite its failure to present specific information, the FCC should have launched an investigation or committed the necessary manpower to obtain and examine all the discovery materials uncovered in the antitrust suit. Civic's suggestion would not only place an impossible burden on the FCC[6] but it would also contravene the license renewal procedures outlined in the Communications Act, 47 U.S.C. § 151 Et seq. (1970), and the regulations promulgated thereunder.
 
 
 9
 Section 309(d) of the Act prescribes rules for the timeliness and contents of petitions to deny license applications. These requirements, echoed in Regulation 1.580, extend to petitions to deny renewal applications, and require specific allegations, supported by affidavits, that are sufficient to make a prima facie showing that renewal is inconsistent with public interest, convenience, and necessity.[7] Section 309(d)(2) of the Communications Act also notes that the Commission's basis for granting the application and denying a hearing will be "the application, the pleadings filed, or other matters which it may officially notice."
 
 
 10
 We have previously acknowledged the need for demanding compliance with procedural aspects of FCC actions in order to protect the interests of orderly administration and finality.[8] This requirement of specificity has often been upheld by the FCC. See, e. g., In re Scott Broadcasting Corp., 52 F.C.C.2d 1029 (1975); In re Midland Broadcasters, Inc., et al., 48 F.C.C.2d 195 (1974), Reconsideration denied, 51 F.C.C.2d 1018 (1975).
 
 
 11
 In this case, the FCC's unwillingness to prolong the renewal decision past the time when Civic could have completed its pleadings evidences proper regard for these administrative interests and Congressional determinations of procedure. We agree that Civic's refusal to complete its responsive pleadings left the FCC no option but to rule on the renewal application based on the information before it.
 
 
 12
 This determination leaves only the question of whether the FCC properly decided that the renewals should be granted and that no substantial and material issues existed which required a hearing.[9] Our review of the FCC's determination of renewal applications is necessarily narrow to give proper effect to the agency's expertise; we may overturn these orders only if they are outside the requisite zone of reasonableness. See, e. g., West Michigan Telecasters, Inc. v. FCC, 130 U.S.App.D.C. 39, 396 F.2d 688, 691 (1968).
 
 
 13
 The FCC's detailed analyses rejecting Civic's claims of obstruction of CATV and UHF development concealment of CATV activities, and antitrust violations[10] are clearly not unreasonable in light of the evidence presented. In addition, since Civic's incomplete reply did not present a prima facie case that the renewal would be inconsistent with the public interest, convenience and necessity, the FCC accurately determined that there were no substantial and material issues requiring a hearing. See Stone v. F. C. C., 151 U.S.App.D.C. 145, 466 F.2d 316, 322-23 (1972); In re Zenith Radio Corp. & GCC Communications of Chicago, Inc., 40 F.C.C.2d 223, 224 (1973).
 
 
 14
 For these reasons, we affirm the appealed orders of the FCC.
 
 
 
 [1]
 The antitrust defendants sought a clarification order of prior protective orders. This clarification belatedly stated that Civic could have disclosed information already used or revealed before the September 30 order in the period between Protective Orders 1 and 2. One licensee, Carter, obtained a court release of the protective orders as to information discovered From him. Following settlement and dismissal of the antitrust action in December, 1973, two other companies obtained release of protective orders governing confidential material obtained from them. Furthermore, licensee Belo agreed in a letter to the FCC and Civic to allow use of protected material before the FCC, but indicated that it wished to retain the protective order to prohibit other uses of the information
 
 
 [2]
 The appeal in this court technically challenges only the orders granting renewal and assignment of the license of Carter Publications, Inc., 46 F.C.C.2d 1075, Reconsideration denied, 48 F.C.C.2d 669 (1974); 46 F.C.C.2d 1099, Reconsideration denied, 48 F.C.C.2d 693 (1974). The issues presented, however, concern the renewal applications of both Carter and Belo. For this reason the memorandum will not distinguish between the applications
 
 
 [3]
 This memorandum omits any discussion of factual issues as to the license assignment raised for the first time by Civic's supplemental brief in this appeal. These are the types of specific data that should have been addressed to the FCC, no later than in Civic's petition for rehearing. This court is not the proper forum for examination and resolution of factual issues never presented for FCC consideration
 
 
 [4]
 Civic's real fear seemed to be that contempt proceedings would be Brought, not that they would be successful. In its letter of March 15, 1974, to the FCC, Civic stated that "there is no assurance that such disclosure would not result in efforts to have us held in contempt of court. . . . We sincerely regret this misunderstanding, but we are not in a position to risk contempt of court, or to dissipate our resources in opposition to motions to hold us in contempt."
 
 
 [5]
 Civic's informal manner of addressing a letter, rather than a motion, to the court was perhaps imprudent, but not totally unreasonable in light of the informal example set by counsel for plaintiff and defendants in the antitrust action. See App. at 43-1 to -5
 
 
 [6]
 As the FCC pointed out in another case in which the petition for denial of renewal failed to provide specific information to the FCC,
 (t)here are 8,230 licensed radio and television stations in the United States. During fiscal year 1972 the Commission received approximately 44,681 complaints, comments and inquiries concerning these stations. If we were required to make detailed findings on every complaint where specific facts are not explicitly stated, our administrative task would be enormous.
 In re Storer Broadcasting Co., 41 F.C.C.2d 792, 799 (1973).
 
 
 [7]
 47 C.F.R. § 1.580(i) provides in relevant part:
 Petitions to deny shall contain specific allegations of fact sufficient to show that the petitioner is a party, in interest, and that a grant of the application would be prima facie inconsistent with the public interest, convenience, and necessity. Such allegations of fact shall, except for those of which official notice may be taken, be supported by affidavit of a person or persons with personal knowledge thereof.
 
 
 [8]
 Congress clearly recognized that sound regulation has procedural as well as substantive elements, and that "the public interest, convenience, and necessity" comprehends both. Orderliness, expedition, and finality in the adjudicating process are appropriate weights in the scale, as reflecting a public policy which has authentic claims of its own
 Spanish Int'l Broadcasting Co. v. FCC, 128 U.S.App.D.C. 93, 385 F.2d 615, 622 (1967), Quoting Valley Telecasting Co. v. FCC, 118 U.S.App.D.C. 410, 336 F.2d 914, 917 (1967) (affirming FCC rejection of untimely intervenor application and petition to deny). Cf. Lee v. FCC, 126 U.S.App.D.C. 45, 374 F.2d 259 (1967).
 
 
 [9]
 47 C.F.R. § 1.591(a) (1974) provides:
 (a) In the case of any application for an instrument of authorization other than a license pursuant to a construction permit, the Commission will make the grant if it finds (on the basis of the application, the pleadings filed, or other matters which it may officially notice) that the application presents no substantial and material question of fact and meets the following requirements:
 (1) There is not pending a mutually exclusive application filed in accordance with paragraph (b) of this section;
 (2) The applicant is legally, technically, financially, and otherwise qualified;
 (3) The applicant is not in violation of provisions of law or this chapter or established policies of the Commission; and
 (4) A grant of the application would otherwise serve the public interest, convenience, and necessity.
 
 
 [10]
 Although the FCC appears to have mistaken the trial court's dismissal with prejudice of the settled claim as a dismissal on the merits, its conclusion that there is no prima facie evidence of antitrust violations is nevertheless reasonable in light of Civic's unsupported allegations and the licensees' answers to the petition