**Daniel F. GUINAN et al., d/b/a Guinan Realty Company, Appellant**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Louis Adelman, Intervenor.**

**No. 16163.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 4, 1961.

Decided Dec. 7, 1961.

Mr. John B. Kenkel, Washington, D. C., with whom Messrs. Arthur H. Schroeder and John P. Bankson, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, General Counsel, Federal Communications Commission, and Daniel R. Ohlbaum, Assistant General Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Stanley S. Neustadt, Washington, D. C., with whom Mr. Leonard H. Marks, Washington, D. C., was on the brief, for intervenor.

Before Mr. Justice REED, retired,* and DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Louis Adelman (intervenor) and Guinan Realty Company (appellant) filed with the Federal Communications Commission (Commission) applications for construction permits for new Class III standard broadcast (AM) stations to op-

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

erate on 1300 kilocycles, with power of one kilowatt, directional antenna, daytime only, in the communities, respectively, of Hazelton, Pennsylvania (population 35,491, with one local broadcast station), and Mount Carmel, Pennsylvania (population 14,222, with no local broadcast station). Because of the potentially destructive interference which would be caused by simultaneous operation of these proposed stations, the applications were tagged mutually exclusive and, accordingly, were designated for consolidated hearing. In addition, in its order of designation, the Commission directed inquiry as to whether the interference which the operation proposed by appellant would receive from Station WFBR, Baltimore, Maryland, would affect more than ten per cent of the population within the normally protected contour proposed by appellant and, if so, whether circumstances exist to warrant a waiver of Section 3.28(c) of the Commission's rules, which reads in pertinent part:

"Upon a showing that a need exists, a Class * * * III station may be assigned to a channel available for such class even though interference will be received within its normally protected contour; * * * Provided * * * (3) the interference received does not affect more than 10 percent of the population in the proposed station's normally protected primary service area. * * "
47 C.F.R. § 3.28(c).

The issues specified to be determined at the consolidated hearing were the following:

"1. To determine the areas and populations which would receive primary service from the proposed operations and the availability of other primary service to such areas and populations.

"2. To determine whether, because of interference received, the proposed operation of the Guinan Realty Company would comply with Section 3.28(c) of the Commission's Rules; and if compliance with Section 3.28(c) is not achieved, whether circumstances exist which would warrant a waiver of said Section of the Rules.

"3. To determine in the light of Section 307(b) of the Communications Act of 1934, as amended [47 U.S.C.A. § 307(b)], which of the operations proposed in the above-captioned applications would better provide a fair, efficient and equitable distribution of radio service.

"4. To determine in the light of the evidence adduced pursuant to the foregoing issues which of the applications should be granted."

After the closing of the testimony, the Hearing Examiner issued his initial decision, granting the application of appellant and denying that of the intervenor. Exceptions duly filed by intervenor were heard before the Commission en banc. The Commission reversed the Hearing Examiner's initial decision, granted intervenor's application and denied that of appellant. In its decision, adopted April 8, 1960, released April 12, 1960, the Commission said:

"Since we have found and concluded that a waiver of Section 3.28 (c) in the circumstances here existing is not warranted with respect to the Guinan application, this application must be denied. At the time of designation, Adelman was found to be legally, financially, and technically qualified to construct and operate his proposed station. A grant to Adelman would serve the purposes of Section 307(b) of the Communications Act of 1934, as amended, and would be in the public interest. A comparison between Adelman and Guinan on Section 307(b) grounds is unnecessary in view of the denial of Guinan's application for failure to comply with Section 3.28(c)."

Thereafter, appellant filed a petition for reconsideration, stay of order, and rehearing, all of which were denied by the Commission. This appeal followed.

Appellant urges that the Commission was arbitrary and capricious in its refusal to grant a waiver of Section 3.28 (c) of its rules, and that, in so doing, it improperly disregarded the provisions of Section 307(b) of the Communications Act of 1934, as amended, and relevant and material evidence of record. It is further argued that the Commission, even assuming its refusal to waive the rule in question to be proper, erroneously failed to compare the respective needs of Hazelton and Mount Carmel for the service proposed.

■ The Commission has been entrusted with the task of providing for the orderly use of available radio facilities throughout the United States, and, in order to reduce this task to a practical operation, it adopted, among others, Rule 3.28(c), which has become known as the "10% Rule." This rule sets up a standard for dealing with applications which disclose objectionable interference, and at the same time recognizes the necessity for a fair, efficient and equitable distribution of the limited number of frequencies. That the adoption of such a rule by the Commission is a proper, indeed a necessary, exercise and implementation of the power committed to it in the Communications Act is too fundamental a proposition to admit of argument. By the same token, waivers are available if and when in the judgment of the Commission the public interest so requires. Cf. United States v. Storer Broadcasting Co., 351 U.S. 192, 201, 202, 76 S.Ct. 763, 100 L.Ed. 1081 (1956).

The Commission has also determined, on the strength of its experience and expertise, that the 10% rule is a matter of basic qualification, that it is, absent an express waiver by the Commission, a prerequisite to further consideration of an application in the graduated process toward hoped-for approval. In the absence of a waiver, failure to meet the rule's requirements is equivalent to disqualification. Lawrence A. Reilly, 24 F.C.C. 257.

In the present instance, therefore, the Commission adopted, as its first step, the process of determining whether or not a waiver of the 10% rule was justified in appellant's case. This issue was squarely before the Commission because of the prospective seriousness of appellant's proposed operation (affecting 22.5% of the population within the normally protected primary service area) in derogation of the 10% rule. The Commission decided against granting the requested waiver. In this respect, appellant asserts the Commission acted arbitrarily and capriciously, insofar as it allegedly disregarded the aggregate provisions set forth in Section 307(b) of the Communications Act.

■ We do not agree. There need not be, contrary to appellant's contention, a comparative treatment of respective community needs in a situation where two applicants are competing for a mutually exclusive permit, once it has been established that one of the competing applicants is basically unqualified. Simmons v. Federal Communications Commission, 79 U.S.App.D.C. 264, 145 F.2d 578 (1944).[1] And this is precisely what the Commission did here—it found appellant basically unqualified in view of the serious violation of the 10% rule which would be entailed in its waiver.

In denying appellant a waiver, the Commission had to reverse its Hearing Examiner, who had initially granted the waiver principally on the basis of his interpretation of the Commission's decision in Southern Indiana Broadcasters, Inc., 24 F.C.C. 521, 15 R.R. 349. In reviewing the reasons underlying this reversal, the Commission premised its discussion on the especial importance of taking a pragmatic approach in evaluating each requested waiver according to its

---

1. Appellant's contention that Simmons is distinguishable from the present case on the ground that in Simmons the proposed radio tower would be a hazard to air navigation, while in the instant case no such obstruction would exist, is untenable since it is possible for a basic disqualifying condition to appear in a factual form other than an obtruding radio tower.

own particular facts. The Commission then went on to distinguish, on a factual basis, the Southern Indiana case from the instant one. Some of the decisive factors mentioned by the Commission in its comparison were that appellant's proposal would involve a primary service to 93,000 persons and 4775 square miles less than the proposal approved in Southern Indiana; that appellant's less efficient operation would be maintained at twice the power approved in Southern Indiana; and that the degree of appellant's violation of the rule (22.5% as compared to 10%) would not only be appreciably larger than the violation approved in Southern Indiana, but would also mean a toleration of more than double the interference proscribed by the rule.

 We think that waiver of Section 3.28(c) is a matter committed factually to the discretion of the Commission and, had the Commission determined under the circumstances that a waiver should have been granted, we would not have been in position to overrule that decision. In other words, this is just the sort of problem which the Commission was established to determine. It is to be borne in mind that the language of Section 3.28(c) indicates that there shall be no waiver except in exceptional circumstances and where the Commission finds that it would be in the public interest. We do not think it can be fairly said that the Commission did not take into consideration the public interest. The record bears out the fact that the Commission did not ignore the non-engineering aspects of Mount Carmel's need for appellant's proposed station. To the contrary, in fact, the Commission reviewed the public interest needs of Mount Carmel, as for example the population of the community and its presumptive need for or the desirability of a first local station, but found these needs not compelling in the face of appellant's extreme intrusion upon the policy underpinning Section 3.28(c). The tenor and scope of the Commission's analysis of this question

can be gleaned from the language found in paragraph 3 of its decision:

"In reaching this conclusion, the Commission has given the most careful consideration to the Hearing Examiner's thorough and able treatment of the problem, but, for the reasons to be detailed, we cannot agree that a waiver is dictated either by our opinion in Southern Broadcasters, Inc., 24 FCC 521, 15 RR 349, *or by all of the facts in the case.*" [Emphasis added.]

We think that the Commission, in reaching its determination, did not act arbitrarily, capriciously or in disregard of the public interest aspect of the Communications Act. United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763 (1956); National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). We feel the Commission gave full and fair consideration to distribution of service, as well as efficiency, in its denial of the waiver.

Appellant further argues that the Commission improperly and prejudicially denied its petition for rehearing and reconsideration, basing its argument on alleged new evidence to show that appellant's proposed operation would not in fact violate the 10% rule. The evidence originally introduced by appellant, indicating a violation of the rule [22.5%], was obtained, essentially, on the basis of soil conductivities in the manner prescribed by the Commission's rules, even though the rules clearly indicate that the preferred basis on which to predicate such evidence is actual field intensity measurements. In other words, appellant, with full knowledge of the facts, chose the easier of two methods to garner the evidentiary data it needed.

The request for rehearing was a matter committed to the sound discretion of the Commission. United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Communications Act of 1934, Section 405, as amended.

And see Commission's Rule 1.191(f),[2] in force at the time of the Commission's ruling. We find no abuse of that discretion in the record before us. Appellant does not offer *newly discovered* evidence but, rather, evidence easily discoverable initially, and apparently only now deemed crucial by appellant when seen from the highland of hindsight.

As we find no error in the Commission's decision and orders, they are

Affirmed.

2. Section 1.191(f) reads: "No evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission believes should have been taken in the original proceeding will be taken at any rehearing."