**CHAMBERSBURG BROADCASTING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**No. 19902.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 11, 1966.

Decided Dec. 6, 1966.

Certiorari Denied April 17, 1967.

See 87 S.Ct. 1347.

---

13. See note 12, supra.

Mr. Harry J. Daly, Washington, D. C., with whom Messrs. Leonard S. Joyce and George R. Borsari, Jr., Washington, D. C., were on the brief, for appellant.

Mr. William L. Fishman, Counsel, F. C. C., with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F. C. C., were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, F. C. C., also entered an appearance for appellee.

Before EDGERTON, Senior Circuit Judge, and DANAHER and LEVENTHAL, Circuit Judges.

DANAHER, Circuit Judge:

This appellant is licensee of a Class II station, WCHA, which operates on 800 kc, 1 kw, daytime only in Chambersburg, Pennsylvania. WCHA applied for a construction permit to increase its power to 5 kw.[1] Rejecting the recommendation of the Commission's Hearing Examiner [2] while substantially adopting his findings of fact, the Review Board concluded that WCHA had failed to justify a waiver of the 10 per cent rule. Its decision released August 24, 1965, was made the subject of limited review after which the Commission on December 17,

---

1. Reese Broadcasting Co., licensee of station WCBG, filed a petition to deny the WCHA application. WCBG operating on 1500 kc at Chambersburg contended that the WCHA proposal would violate the Commission's 10 per cent rule, 47 C.F.R. 73.28(d) (3) (1965).

2. The responsibility for the ultimate decision does not rest in the Examiner, of course. Cf. Lorain Journal Company v. F.C.C., 122 U.S.App.D.C. 127, 131, 351 F.2d 824, 828 (1965).

1965 released its Memorandum Opinion and Order affirming the Review Board's Decision.

■ The appellant contends here that the Commission had acted unfairly since while denying the application of WCHA, increased facilities had been granted to its competitor, WCBG. We should note at once a fundamental difference between the proposals before the Commission. The WCHA application clearly involved a requirement that the applicant demonstrate justification for waiver of the 10 per cent rule with respect to WCHA's daytime only service. On the other hand, the WCBG application came squarely within an express exception embodied in the 10 per cent rule since WCBG was to provide a first local nighttime service to the community. Despite the contention of WCHA, we see nothing inherently unfair[3] in the Commission's recognition that the public interest would be served by a licensee which comes within the exception to the rule where another applicant for a different service has submitted a proposal in direct contravention of the stated purpose of the rule.[4]

We deem unnecessary a detailed recital of the facts shown on the record before us. It may be noted that the WCHA proposal was found not to provide a first local transmission service and that it would not serve any "white" or "gray" areas. Moreover, the additional area and population proposed to be served by WCHA, its so-called "gain area" lay some 23 to 56 miles distant from Chambersburg. That area was bounded roughly by Harrisburg, only 12 miles from the area's northeast portion; by Altoona only 6 miles from its northwest sector; by Cumberland, Maryland, only 6 miles to the southwest; and by Hagerstown only 7 miles away to the south. The last three named cities each had three AM stations while Harrisburg had four. Some fifty stations, the Board had noted, serve parts of the gain area.

■ We have sought on several occasions to make clear our approval of the policy announced by the Commission as an expert body to be applied to its consideration of applications for waiver of the 10 per cent rule. Only where the circumstances are definitely unusual and it has been clearly demonstrated that the public interest requires such exceptional action is a waiver to be granted, the Commission has repeatedly stated. We have supported the Commission's position unless we have become convinced in a particular case that the Commission has acted arbitrarily or in violation of procedural safeguards.

■ Absent a demonstrable showing of invalidity in such particulars, we have pointed out[5] that where the Commission's action is supported in the record, we will not substitute our judgment for that of the body to whose expertise Congress has confided the decisional process.

■ In our study of the record here, we have taken into account the several contentions urged upon us, but once again, we will be "slow to interfere."[6] We are satisfied that affirmance is clearly appropriate.

So ordered.

3. James S. Rivers, Inc., (WJAZ) v. F. C.C., 351 F.2d 194, 196, 122 U.S.App. D.C. 29, 31, text and n. 3 (1965).

4. Had WCHA really considered that it was being treated inequitably, it seems strange that no such argument had been raised before the Hearing Examiner or the Review Board. The contention was offered for the first time when WCHA filed before the Commission its application for review. Cf. Abacoa Radio Corporation v. F.C.C., 123 U.S.App.D.C. 218, 358 F.2d 849 (1966).

5. Sayger v. F.C.C., 114 U.S.App.D.C. 112, 312 F.2d 352 (1962); Sunshine State Broadcasting Co. v. F.C.C., 114 U.S.App. D.C. 271, 314 F.2d 276 (1963); Guinan v. F.C.C., 111 U.S.App.D.C. 371, 297 F.2d 782 (1961).

6. Interstate Broadcasting Company v. F. C.C., 105 U.S.App.D.C. 224, 231 and see discussion at 227–229, 265 F.2d 598, 605, and see discussion at 601–603 (1959).