WSTE–TV, INC., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Puerto Rico Broadcasting, Inc., Invervenor.

No. 76–1361.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1977.

Decided Oct. 21, 1977.

Eugene F. Mullin, Washington, D. C., with whom Nathaniel F. Emmons, Washington, D. C., was on the brief, for appellant.

Raymond L. Strassburger, Counsel F. C. C., Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Washington, D. C., at the time the brief was filed and Daniel M. Armstrong, Associate Gen. Counsel F. C. C., Washington, D. C., were on the brief, for appellee.

Ben C. Fisher, Washington, D. C., with whom Charles H. Bell, Jr., Washington, D. C., was on the brief, for intervenor. Richard R. Zaragoza, Washington, D. C., also entered an appearance for intervenor.

Before TAMM and MacKINNON, Circuit Judges and OLIVER GASCH,* United States District Judge for the United States District Court for the District of Columbia.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

Appellant, WSTE–TV, Inc. (WSTE) applied to the Federal Communications Commission (Commission) in 1967 for modification of its existing construction permit for Channel 13 in Fajardo, Puerto Rico. The application requested authorization for location of a proposed transmitter in Jimenez, Puerto Rico, rather than in Sardinera Barrio, as previously authorized. The Commission's Hearing Examiner initially decided that the site change of the proposed transmitter would violate section 73.685(b) of the Commission's rules,[1] because predicted "shadowing" in Fajardo would increase from seventeen percent to seventy-five percent of the principal city area.[2] The Commission's Review Board agreed with that decision, and further determined that locating the transmitter at the new site would violate section 73.685(a) of the Commission's rules,[3] because the proposed transmitter would not provide an adequate city-grade signal to all of Fajardo.[4] Finding that waiver of violation of the rules would not be in the public interest, the Review Board denied WSTE's application for modification,[5] and the Commission accepted the Board's decision.[6]

At the same time, the Commission denied WSTE's request to file a supplement to its application for review.[7] In the supplement, WSTE asked the Commission to consider, in its review, an application which had recently been filed for permission to establish a UHF translator in Fajardo. WSTE contended that operation of such a translator would correct the signal strength defects found by the Review Board to exist in the Jimenez transmitter site. After the Commission denied WSTE's application for review and rejected its supplement, WSTE appealed to this court pursuant to section 402(b) of the Communications Act of 1934, as amended.[8] We affirm the decisions and orders relating to violations of the Commission's technical rules on signal intensity over the principal city, but remand the case to the Commission for consideration of WSTE's application to establish a UHF translator to correct such violations.

I

WSTE contends that the Commission erred in rejecting WSTE's calculations of predicted signal intensity in its principal city, Fajardo, and in finding a violation of section 73.685(a) of the Commission's rules.[9] That section specifies the minimum field intensity which must be provided over the entire principal community by a television transmitter. The method for predicting coverage is set forth in section 73.684 of the Commission's rules.[10] Subsections (a) through (e) of this section establish a specific formula for coverage prediction for areas with average terrain. Subsection (f) provides that when there is irregular terrain around the proposed antenna site, such as a

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1970).

1. 47 C.F.R. § 73.685(b) (1976).

2. *WSTE–TV, Inc.,* 33 F.C.C.2d 466, 477, 484 (1969) (hereinafter referred to as Initial Decision). "Shadowing" is the attenuation of signal strength caused by an obstruction between the transmitter and the principal city.

3. 47 C.F.R. § 73.685(a) (1976).

4. *See WSTE–TV, Inc.,* 33 F.C.C.2d 438, 449–50 (1972) (hereinafter referred to as Review Board Decision).

5. *Id.* at 452.

6. *WSTE–TV, Inc.,* 40 F.C.C.2d 773, 774 (1973) (hereinafter referred to as Commission Order); *see* 47 U.S.C. § 155(d)(3) (1970).

7. Commission Order, 40 F.C.C.2d at 774.

8. 47 U.S.C. § 402(b) (1970).

9. Brief for Appellant at 13.

10. 47 C.F.R. § 73.684 (1976).

mountain ridge, the normal prediction method may be supplemented by a showing "concerning the contour distances as determined by other means." No particular method is specified in the rules for this supplemental showing.

The Hearing Examiner in this case found that WSTE's Jimenez proposal would not violate section 73.685(a).[11] In arriving at this conclusion, he accepted the calculations employed by WSTE's engineer, who used the Bullington method[12] to make the supplemental showing under section 73.684(f). The engineer for Puerto Rico Broadcasting, Inc., intervenor here and a party to the administrative proceedings, employed the Dougherty-Maloney method[13] for computing signal strength loss caused by a mountain ridge between Jimenez and Fajardo. Under the Bullington method, the WSTE proposal would comply with section 73.-685(a), while under the Dougherty-Maloney method, it would violate that section of the rules. In accepting WSTE's calculations, the Hearing Examiner noted that the Bullington method had gained professional approval and that the Commission had relied upon it in the past.[14]

The Commission's Review Board did not agree with the Hearing Examiner on this issue, holding instead that WSTE's proposed transmitter location would violate section 73.685(a). In so holding, the Board accepted the Dougherty-Maloney technique for predicting signal intensity loss from the irregular terrain between Jimenez and Fajardo. Because only about seventy percent of Fajardo's population would receive the minimum signal required by section 73.-685(a) according to the Dougherty-Maloney calculation, the Review Board denied WSTE's application for modification of its construction permit.[15] The Commission accepted the findings and conclusions of the Review Board.[16]

The selection of the appropriate method for computing signal intensity loss due to irregular terrain between a transmitter and a principal city is a highly technical decision, calling for very specialized knowledge and expertise. It is the type of problem which must be left to the agency which can deal with it "at a level of understanding and comprehension above that of the court." *Northeast Broadcasting, Inc. v. FCC,* 130 U.S.App.D.C. 278, 287, 400 F.2d 749, 758 (1968). Furthermore, we recognize that Congress has specifically entrusted the Commission with the implementation of the Communications Act, and with the formulation and administration of rules and regulations to effectuate its policies. *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 379–81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *see Marsh v. FCC,* 140 U.S.App.D.C. 384, 388, 436 F.2d 132, 136 (1970). Therefore, unless the administrative proceeding is deficient or the Commission's ultimate decision is arbitrary, capricious, or unreasonable, this court will defer to the Commission's recognized expertise on such technical issues as the one involved here. *West Michigan Telecasters, Inc. v. FCC,* 130 U.S.App.D.C. 39, 42, 396 F.2d 688, 691 (1968); *accord, Stone v. FCC,* 151 U.S.App.D.C. 145, 151, 466 F.2d 316, 322 (1972); *Pinellas Broadcasting Co. v. FCC,* 97 U.S.App.D.C. 236, 238, 230 F.2d 204, 206, *cert. denied,* 350 U.S. 1007, 76 S.Ct. 650, 100 L.Ed. 869 (1956); *see Fidelity Television, Inc. v. FCC,* 169 U.S.App.D.C. 225, 240, 515 F.2d 684, 699, *cert. denied,* 423 U.S. 926, 96 S.Ct. 271, 46 L.Ed.2d 253 (1975).

The Commission's reliance on the Dougherty-Maloney method was plainly not arbitrary, capricious, or unreasonable. As stated above, section 73.684(f) does not specify

---

11. Initial Decision, 33 F.C.C.2d at 477, 484.

12. Bullington, *Radio Propagation at Frequencies Above 30 Megacycles,* Proc.I.R.E. 1122 (1947).

13. Dougherty & Maloney, *Application of Diffractions by Convex Surfaces to Irregular Terrain Situations,* J. Research, Nat'l Bureau of Standards, 239 (1964).

14. Initial Decision, 33 F.C.C.2d at 477.

15. Review Board Decision, 33 F.C.C.2d at 450, 452.

16. Commission Order, 40 F.C.C.2d at 774.

the "other means" by which a supplemental showing on coverage prediction may be made, leaving that decision to the experts of the parties to the administrative proceeding. The Commission has relied on methods other than Bullington in the past, see, e. g., *WATR–TV, Inc.,* 28 F.C.C.2d 501, 503 (1971); *Liberty Television,* 18 F.C.C.2d 924 (1969), and has not as yet officially sanctioned any one technique to be used in all cases involving irregular terrain.[17] Although the Commission apparently has never before expressly rejected the use of Bullington calculations, we can find nothing in the Commission's rules or prior decisions which precludes such rejection in a case in which a different method is deemed more accurate. *Cf. Northeast Broadcasting, Inc. v. FCC,* 130 U.S.App.D.C. at 287, 400 F.2d at 758 (concerning the use of alternatives to the 5 mv/m contour to measure area penetration). Furthermore, the Review Board fully explained its reasons for choosing Dougherty-Maloney over Bullington, stating, in part, that the former was "the most current and reasonable technique in the ongoing development of scientific methods of evaluating the diffraction of radio waves by irregular terrain features."[18] Since it appears from the record that the Commission engaged in the required "reasoned decision-making"[19] and that its final determination was not arbitrary, capricious, or unreasonable, we affirm its conclusion that WSTE's proposal violates section 73.685(a).

## II

[2] WSTE also contends that the Commission's refusal to consider its remedial application for a UHF translator in Fajardo was arbitrary and capricious.[20] As justification for rejection of WSTE's supplement

to its application for review, the Commission stated that the supplement improperly raised matters which had not been considered by the Review Board, that it was untimely, and that it alleged no public interest factors which would require its consideration on the merits.[21] For the reasons stated below, we find this justification insufficient, and therefore remand the case so that the Commission may more fully consider the translator application.

According to statute[22] and Commission rule,[23] an application for review by the Commission may not rely on matters upon which a designated authority, such as the Review Board, has not had an opportunity to pass. In this case, the UHF translator application was not filed until after the Review Board's decision was made, and therefore the issue was presented to the Commission prior to any review by a subordinate body. The ban against the introduction of new matters at the Commission review level is justified by "the public interest benefits inherent in the orderly and fair administration of the Commission's business." *Edgefield-Saluda Radio Co. (WJES),* 8 Rad.Reg.2d 611, 614 (1966). However, it is not clear to us from the record that the public interest in reviewing WSTE's UHF translator application is outweighed by the public interest in administrative efficiency and finality. Moreover, it was only after the Review Board had found the proposed transmitter site violative of section 73.685(a) that WSTE could have seen a translator as necessary to the approval of the new construction site. Finally, this court in the past has recognized exceptions to the general rule on review of new matters when, as in this case, the effect of such

---

17. In August 1975, the Commission did amend 47 C.F.R. § 73.684 and adopt the "terrain roughness" formula for calculating signal strength loss over irregular terrain. 53 F.C.C.2d 855, 863 (1975). However, shortly thereafter, it suspended use of that formula. 56 F.C.C.2d 749, 750 (1975).

18. Review Board Decision, 33 F.C.C.2d at 449.

19. *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852

(1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

20. Brief for Appellant at 42.

21. Commission Order, 40 F.C.C.2d at 773–74.

22. 47 U.S.C. § 155(d)(5) (1970).

23. 47 C.F.R. § 1.115(c) (1976).

matters is "palpably significant and proximate," *W. S. Butterfield Theatres, Inc. v. FCC,* 99 U.S.App.D.C. 71, 75, 237 F.2d 552, 556 n.10 (1956), or when they could, if believed, undermine the basis of the Commission's conclusions, *WMOZ, Inc. v. FCC,* 120 U.S.App.D.C. 103, 104, 344 F.2d 197, 198 (1965).

The Commission also justified its rejection of WSTE's supplement by stating that the pleadings were untimely. Section 1.115(d) of the Commission's rules[24] stipulates that applications for review and supplements thereto must be filed within thirty days of the action to be reviewed. In this case, approximately eight months elapsed between the Review Board's decision and WSTE's filing of the supplement in question. Again, this court recognizes that enforcement of an agency's procedural, as well as substantive, rules benefits the public interest by prompting finality in administrative litigation. *Valley Telecasting Co. v. FCC,* 118 U.S.App.D.C. 410, 413, 336 F.2d 914, 917 (1964); *accord, Civic Telecasting Corp. v. FCC,* 173 U.S.App.D.C. 236, 239, 523 F.2d 1185, 1188 n. 8 (1975), *cert. denied,* 426 U.S. 949, 96 S.Ct. 3169, 49 L.Ed.2d 1186 (1976). However, the Commission's Review Board has itself stated that "it would improve and expedite our disposition of these untimely petitions . . . in cases where the public interest demands that the merits of such a deficient petition be considered, to initiate a practice of considering the late-filed petition to the extent that serious public interest questions are raised." *Edgefield-Saluda Radio Co. (WJES),* 8 Rad. Reg.2d at 614–15 n. 3. The overriding concern of the Commission in the granting or denial of applications must be the public interest. *Brandywine-Main Line Radio, Inc. v. FCC,* 153 U.S.App.D.C. 305, 338, 473 F.2d 16, 49 (1972), *cert. denied,* 412 U.S. 922, 93 S.Ct. 2731, 37 L.Ed.2d 149 (1973); *see* 47 U.S.C. §§ 307(a), 309(a) (1970). The Commission's dismissal of WSTE's supplement on purely procedural grounds cannot be upheld, therefore, unless it is clear that the

Commission considered whether the public interest would be served by reviewing the supplement on its merits.

A fundamental requirement of all administrative decisions is that the basis for the agency's ultimate conclusions be clearly and fully articulated, so that judicial review can be something more than perfunctory deference and approval. *E. g., Sudbrink Broadcasting, Inc. v. FCC,* 166 U.S.App.D.C. 85, 89, 509 F.2d 418, 422 (1974); *Interstate Broadcasting Co. v. FCC,* 116 U.S.App.D.C. 327, 331, 323 F.2d 797, 801 (1963). On the record before us, we are unable to judge whether the Commission fully considered the public interest involved in WSTE's UHF translator application. In its rejection of the supplement tendered by WSTE, the Commission merely stated that "no public interest factors have been alleged which require our consideration of the matters set forth therein on the merits at this late stage of the proceeding."[25]

According to statute, the Commission may grant or deny applications for review "without specifying any reasons therefor." 47 U.S.C. § 155(d)(5) (1970). However, the case before us does not present the typical situation in which the Commission reviews findings and determinations already articulated by the Review Board and therefore need not reiterate the reasons already given. *Northeast Broadcasting, Inc. v. FCC,* 130 U.S.App.D.C. at 287, 400 F.2d at 758. The only official mention of the UHF translator issue was the Commission's summary rejection of its consideration in connection with WSTE's application for review. Likewise, the arguments of the Commission's counsel on appeal cannot be accepted as a substitute for articulation by the agency itself of the reasons for its conclusions. *West Michigan Telecasters, Inc. v. FCC,* 130 U.S.App.D.C. 39, 42–43, 396 F.2d 688, 691–92 (1968). In short, there is no way that we can determine from the administrative record before us whether the Commission ever considered the public interest that might be served by granting WSTE's remedial appli-

---

**24.** *Id.* § 1.115(d).

**25.** Commission Order, 40 F.C.C.2d at 774.

cation for a UHF translator, or whether it even assessed the pertinence of that application to its review.

In its past decisions, the Commission has evinced a hesitancy in allowing translator service to overcome predicted signal deficiencies in a station's principal city. Thus, the Commission has clearly stated that "translators are not intended to provide a means of avoiding compliance with the rules," *Central Coast Television (KCOY–TV), Santa Maria, Calif.,* 2 F.C.C.2d 306, 308 (1966), and that they "cannot compensate for the loss of primary service," *Central Coast Broadcasters, Inc. (KCOY–TV), Santa Maria, Calif.,* 18 F.C.C.2d 794, 795 (1969). *See also West Michigan Telecasters, Inc. v. FCC,* 148 U.S.App.D.C. 375, 381, 460 F.2d 883, 889 (1972). However, these cases involved attempts by the applicants to relocate existing transmitters and thereby to expand their coverage areas while depriving their principal communities of established television service. On the other hand, the Commission in the past has approved applications for translators to improve coverage in principal cities when existing coverage has proved inadequate. *Quality Telecasting Corp.,* 22 Rad.Reg.2d 959, 961 (1971) (in which the Commission specifically indicated that Puerto Rico's unique terrain might, in some instances, call for a tempering of the rules); *Central Coast Broadcasters, Inc., Paso Robles, Calif.,* 18 F.C.C.2d 203, 205 (1969); *see* Brief for Appellant at 44. We have been unable to find any case or policy formulation by the Commission which clearly dictates the outcome of a consideration of WSTE's remedial application on the merits, and which therefore might lead us to affirm the Commission's decision despite the lack of articulated reasoning.

Channel 13 was allocated to Fajardo in 1957.[26] That city has not yet received any television coverage, although twenty years have elapsed since the Commission found that the public interest would be served by the allocation. Ostensibly, WSTE's remedial application to install a UHF translator in Fajardo would correct the defects in its application for modification of its construction permit, thereby allowing it to begin transmission to the principal city. In view of the situation, the Commission's conclusory statement that WSTE's supplement did not allege sufficient public interest factors to warrant consideration on the merits must be found insufficient. We therefore remand the case to the Commission for consideration of whether the public interest in reviewing the supplement outweighs its procedural deficiencies and for a full articulation of the basis of the conclusion it reaches.

### III

■ Before concluding, we shall briefly address the issue, raised by appellant,[27] of whether the Commission should have waived the violations of sections 73.685(a) and 73.685(b). The possible waiver of violations of agency rules is a question which is normally left to agency discretion. *Chambersburg Broadcasting Co. v. FCC,* 125 U.S. App.D.C. 346, 349, 372 F.2d 919, 921 (1966), *cert. denied,* 386 U.S. 1004, 87 S.Ct. 1347, 18 L.Ed.2d 433 (1967). Especially when technical and engineering rules are considered in the context of waiver, the expertise of the agency should be allowed to function without interference from the courts, unless the decision is arbitrary. *Sunshine State Broadcasting Co. v. FCC,* 114 U.S.App.D.C. 271, 273, 314 F.2d 276, 278 (1963). We therefore affirm the Review Board's denial of waiver of the section 73.685(a) violation and the Commission's tacit acceptance of that action. From the record,[28] it appears that the Review Board fully considered the competing public interest factors involved in the proposed waiver and that its final decision on that issue was a reasoned one.

It should be noted here that the granting of WSTE's UHF translator application will

---

26. 16 Rad.Reg. 1544, 1547 (1957).

27. Brief for Appellant at 34, 40.

28. Review Board Decision, 33 F.C.C.2d at 451–52.

not correct the section 73.685(b) violation, found by the Hearing Examiner and affirmed by the Review Board and the Commission.[29] However, should the Commission grant the translator application, thereby bringing WSTE's Jimenez proposal into compliance with section 73.685(a), it should consider possible waiver of subsection (b) of that rule as an isolated issue. Subsection (a) is phrased in mandatory terms, setting specific levels of signal strength which must reach the principal city. Subsection (b), on the other hand, is phrased in admonitory terms, providing guidelines for the selection of transmitter sites which would eliminate as much shadowing as possible from intervening obstructions. While the admonitory language does not connote that the subsection is incapable of violation, *Central Coast Television (KCOY–TV), Santa Maria, Calif.,* 14 F.C.C.2d 985, 991 (1968), the question of substantial compliance with its terms or waiver of its violation should be judged by a less stringent standard than if it were a mandatory provision. *See WJR, The Goodwill Station, Inc.,* 25 F.C.C. 159, 189 (1958); *Versluis Radio & Television, Inc.,* 19 F.C.C. 1, 21 (1954). The Commission has not had an opportunity to assess the possibility of waiver of the subsection (b) violation as a separate issue, unaccompanied by a finding of a violation of subsection (a). We therefore hold that, if WSTE's UHF translator application is granted as a remedy to the violation of section 73.685(a), the question of possible waiver of the violation of section 73.685(b) should be considered as a separate issue and the reasons for its granting or denial clearly articulated by the Commission.

*Affirmed in part and remanded in part.*